JACHARLES R. JONES, Judge.
Appellants Jean Leon and Pelican State Mutual Insurance Co. appeal a jury verdict awarding the plaintiff Carl L. Gygax a total of $614,420 for injuries suffered when he fell and broke his two elbows while working as a mechanic at the Arabi Service Station.
FACTS
Plaintiff, Carl Gygax was injured on August 29, 1988, while employed as a mechanic at the Arabi Service Station. At the time of the accident the service station, which was formerly owned by Carl Gygax, was owned by Gary Brugoto and was being operated by Gary Brugoto d/b/a Arabi Service Station. Jean Leon was the owner and lessor of the property on which the service station was being operated and had leased the property to Mr. Brugoto.
While attempting to walk from one service bay to another, plaintiff stepped on an air hose and while attempting to regain his balance stepped on the sloped service between the bays and fell sustaining severe injuries to his two elbows.
12Jean Leon’s liability was predicated upon her being negligent and strictly liable as owner of the premises in permitting the sloped surface in the passageway between the two bays to exist without taking any measures to correct the allegedly defective condition of the floor.
The jury returned a verdict finding that plaintiffs injury was a result of 1) a defect in the premises, 2) negligence of Arabi Service Station, and the contributory negligence of the plaintiff, Carl Gygax. The jury assigned percentages of fault as follows:
A) A defect in the premises (fault of Jean Mae Trebucq Leon) 43%
B) A condition associated with the operation of the service station (fault of Gary Brugoto d/b/a Arabi Service Station) 39%
C) The negligence of Carl Gygax 18%
TOTAL 100%
*1239 The jury apportioned damages as follows:
Past wages $60,670.00
Future wages 125,000.00
Medical expenses 38,760.00
Physical pain and suffering 300,000.00
Mental pain and suffering 50,000.00
Disability 50,000.00
TOT AT, $614,420.00
After a reduction of the jury’s verdict, pursuant to the percentage of fault assessed against plaintiff and his employer (Gary Bru-goto), the trial court signed a judgment for plaintiff in the amount of $251,912.50.
Defendants filed a Motion for New Trial and a Motion for Judgment Notwithstanding the Verdict. Following a denial of both motions by the trial court judge, defendants filed this suspensive appeal. Plaintiff filed an answer to the appeal.

IsDISCUSSION AND LAW

In the first assignment of error, appellants argue that the jury erred in finding liability because of “defective” premises and the trial court erred in denying appellants’ motion for judgment notwithstanding the verdict.
First, appellants argue that no expert testimony was presented to establish a defect in the premises. Appellant’s argument that because no expert testimony was submitted to establish a defect, the trier of fact erred in finding a defect in the premise has no merit. Not every defect ease requires expert testimony. A defect may be inferred from the circumstances of the accident. Brown v. Sears, Roebuck and Co., 514 So.2d 439, 444 (La.1987); Himel Marine, Inc. v. Braquet, 629 So.2d 425, 427 (La.App. 3rd Cir.1993), writ denied, 94-0051 (La. 2/25/94); 632 So.2d 770.
Numerous lay witnesses testified as to the steepness of the slope between the two bays and corroborated the plaintiffs testimony that the sloped surface constituted a defect. Additionally, the photographs submitted into evidence also substantiate a finding that the steep slope constituted a defect in the premises. The testimony of the lay witnesses, when coupled with the photographs support a finding that the jury did not commit manifest error when it found the premises defective.
Appellants also argue that the apportionment of 39% fault to the service station and 43% fault to the owner of the premises is erroneous since the direct proximate cause of the accident was the air hose lying on the ground which the plaintiff stepped on. This argument has no merit. Plaintiff testified that it was the slope which caused him to not be able to catch his balance when he stepped on the air hose. The issue of fault and percentages of fault was a fact issue to be determined by the jury. Absent some manifest error on the part of the jury, this court has no authority to second guess the jury and 14reassess percentages of fault. Having reviewed the record and the cases, we cannot say the jury erred in assessing greater liability to the owner of the premises than to the operator of the business.
In the next assignment of error appellants argue that the jury erred in granting an excessive award for general damages.
The standard of appellate review of general damages awards was enunciated in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), when the court stated:
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239,158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular eir- *1240 cumstances that the appellate court should increase or reduce the award.
Youn, supra at 1261.
The eases cited by the appellants to support the argument that the award is excessive are clearly distinguishable from this case. Most of those plaintiffs only broke one arm or elbow. Additionally, the other human factors of this ease are missing in the eases cited by the appellants. The plaintiff in the case sub judice left school in either the eighth or eleventh grade, he can print but cannot write, he has worked as a mechanic since he was 12 and has no other skills. Admittedly, he will experience pain when trying to twist or turn screws. He has difficulty even turning a door knob. Additionally, the plaintiffs carpal | {¡tunnel syndrome (which admittedly is not related to the accident) further limits his work options.
In Youn v. Maritime Overseas Corp., supra., the court recognized the need for examining the particular effect of the injuries on the particular party to the litigation. The court expressed the importance of an individual assessment of each case when it stated:
In Reck, this court disapproved the appellate court’s simply reviewing the medical evidence and then concluding that the award for those injuries was excessive, without taking into consideration the particular effect of the particular injuries on the particular plaintiff. This court further disapproved of the use of a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the “much discretion” of the trier of fact. Gaspard v. LeMaire, 245 La. 289, 158 So.2d 149 (1968); Ballard v. National Indem. Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La.1974); Spillers v. Montgomery Ward & Co., 294 So.2d 803 (La.1974).
Youn, supra at 1260.
The circumstances of this case are unique. Given the fact that this 44 year old illiterate mechanic broke both elbows, already has three fingers missing on his left hand, and has advancing arthritis, it cannot be said that the jury abused its much discretion in awarding the amount awarded for damages. Pursuant to Youn, supra, this court has no authority to decrease the damage award of the jury.
LNext, appellants argue the trial court erred in allowing medical evidence adduced on the eve of trial which evidence introduced newly formed opinions of the medical expert without allowing defendants the opportunity to have the medical evidence considered by an expert. More specifically, appellants complain of allowing Dr. Gessner, the treating physician to testify to potential arthritis based on a test taken one working day before the trial. Appellants allege they were unaware of the test and unable to get an expert to rebut this prejudicial testimony.
This argument has no merit as the appellant could not have been surprised by the testimony. The medical records are replete with reference to “traumatic arthritic elbow”. The medical records contained records indicating that plaintiff was hospitalized July 5, 1989, for the arthritic elbow which the records indicated was secondary to the accident. Thus appellants should have been on notice that Dr. Gessner would testify about the arthritis findings.
Next appellants argue the trial court erred in allowing economic testimony relative to plaintiffs lost past and future earnings based on plaintiffs testimony of his estimated weekly earnings.
The plaintiff has the burden of proving his case by a preponderance of the evidence and must submit documentation to *1241 substantiate actual wages. However, given the circumstances of this case wherein it was admitted that the pay roll records were incomplete and no tax forms were filed, it was necessary to resort to other evidence to establish plaintiffs actual wages.
Appellant argues the jury relied on calculations based on an amount other than documented earnings history and that plaintiffs economic expert, Dr. Goodman based his calculations on figures not in evidence.
The evidence on wages was admittedly contradictory. The payroll records of Arabi Service Station reflected that the plaintiffs earnings were ^considerably less than the $600 average weekly earnings capacity cited by Dr. Goodman. Moreover, the only available tax records showed that the plaintiff only averaged $8,059.23 over the years 1986-1988. The employer admittedly did not pay any taxes to IRS since he considered the plaintiff to be on contract labor and the plaintiff allegedly told the employer not to withhold taxes.
The plaintiff contradicted himself several times when called upon to explain why he had not filed and or paid taxes. Initially he claimed in interrogatories that he did not know he owed any taxes. Later, he claimed that if he had done so, it would have caused problems for his employer, Gary Brugoto. Although the plaintiff testified that his earnings exceeded the documented payroll records provided by plaintiffs employer, he also admitted that he did not report these earnings to the Internal Revenue Service as he did not file income tax returns. He produced no written documentation of his earnings. His testimony that he was paid in cash and cheeks was corroborated by the testimony of his former roommate who claimed to have seen some of the plaintiffs pay envelopes and noted they contained checks and cash.
While the plaintiffs expert’s calculations appear to be based on oral information from plaintiff in contrast to the documented payroll information, we cannot say the jury erred in according some credence to the testimony, since the payroll information was admittedly incomplete.
Appellee argues that based on the testimony of the experts, this court should increase the jury’s award to reflect lower limits of lost wages that is $118,387 for past due wages and $270,587 for future wages. We disagree.
In a ease such as this (where the evidence presented on both sides is contradictory, the payroll records are incomplete, the plaintiff kept no written records of earnings, and the plaintiffs employer did not keep good records nor give the employees w-2 forms), the jury has the discretion to choose to | sdetermine wages based on its own assessment of the credible substantiating evidence.
Because no interrogatories were submitted to ascertain what testimony the jury based its assessment of damages, we are unable to determine which testimony was accepted and or rejected by the jury. Assuming the jury believed the plaintiffs testimony concerning the amount of money he averaged per week, the minimum wages figures used by Mr. Boudreaux (appellant’s expert) support the minimal amount awarded by the jury.
Next, appellants argue that the trial court erred in failing to allow the defendant to introduce a transcribed statement taken by intervenor’s representative of plaintiff as impeachment evidence.
The transcribed statement, which was proffered into the record, is a typewritten statement of an alleged tape recorded statement taken by a representative of the workman’s compensation intervenor who questioned the plaintiff about the accident. The tape itself was not presented to check for accuracy or authentication. Nor was the person who recorded the statement present. The document was not listed in the appellant’s pre-trial order. Additionally no credible explanation was offered to justify production of the statement for the first time on the last day of trial. Further, our review of the statement leads us to conclude the statement in question is not impeachment evidence. Thus, any error caused by the admission of the statement was harmless.
*1242 Subsequent to the taking of this appeal, defendant Pelican became insolvent. Jean Leon and LIGA filed a reply brief raising new issues. More specifically, these appellants argue that 1) pursuant to La.R.S. 22:1382 LIGA has limited liability in this case, 2) Casualty Reciprocal Exchange is precluded from recovering against LIGA and its insured Jean Leon for its reimbursement |9for workers’ compensation,[1] and 3) plaintiff must exhaust all insurance remedies prior to recovery against LIGA. None of these issues formed the basis for this appeal, nor has the trial court issued any judgment relative to these issues. Accordingly, no basis exists for this court to address these issues in this appeal.
For the reasons herein stated, the judgment of the trial court is affirmed.

AFFIRMED.

. Casually Reciprocal Exchange, the worker's compensation insurer for Gary Brugoto, d/b/a/ Arabi Service Station, premised its intervention on the fact that it had paid plaintiff weekly compensation benefits totalling $32,750 and medical expenses totalling $25,383.52. However, the judgment forming the basis for this appeal is silent on the issue of the intervention.