ROSEMARY LEDET, Judge.
|¶ This is a commandeering case arising out of Hurricane Katrina. On May 18, 2007, Olivier Plantation, L.L.C.; Park Investments, Ltd.; and Morning Park, Inc. (collectively “Olivier”) commenced this suit against St. Bernard Parish (“St. Bernard”) and the Lake Borgne Basin Levee District (“LBBLD”) seeking just compensation under the Louisiana Constitution. Olivier alleged that St. Bernard and LBBLD commandeered its property, removing an unknown quantity of borrow material from its property, and caused damages through their access and construction activities on its property. Following a trial based upon joint stipulations and deposition testimony, the trial court rendered judgment in favor of Olivier and against St. Bernard and the LBBLD. The trial court found that Olivier was the owner of the borrow material and that it was entitled to be compensated for the taking of the borrow material at the rate of $5.00 per cubic yard as well as attorney’s fees. From this judgment, St. Bernard and the LBBLD appeal. For the reasons that follow, we affirm.
| .FACTUAL AND PROCEDURAL BACKGROUND
The factual and procedural background of this case was summarized by the federal court in Olivier Plantation, LLC v. St. Bernard, Parish, 744 F.Supp.2d 575, 577-79 (E.D.La.2010) (“Olivier I ”), as follows:
This case arises out of alleged damage to private properties caused by the actions of local and federal government entities while making emergency repairs to a levee damaged by Hurricane Katrina. This levee, the Lake Pontchartrain and Vicinity Hurricane Protection Levee (the “Levee”), located in St. Bernard Parish, Louisiana, was originally erected during the construction of the Mississippi River Gulf Outlet (“MRGO”), which was Congressionally authorized by the River and Harbor Act in 1956 and completed in 1968. On June 18, 1967 and April 15, 1970, Defendant Lake Borgne Basin Levee District (“LBBLD”) issued resolutions appropriating property necessary to create the Levee adjacent to the MRGO. The federal government, in concert with state authorities, obtained rights over the land upon which the Levee was built. On November 20, 1979, the LBBLD adopted a resolution whereby it appropriated borrow areas to construct the Levee. Plaintiffs are the owners of certain property that abuts the Levee.
In August 2005, Hurricane Katrina caused damage to the Levee. Shortly thereafter, Defendant St. Bernard Parish (“St. Bernard”) signed an Executive Order invoking its emergency powers under the Louisiana Homeland Security and Emergency Assistance and Disaster Act, La.Rev.Stat. 29:721 et seq. Pursuant to these powers, on Septem *967 ber 29, 2005, St. Bernard signed an Order entitled “Commandeering Property and Granting Irrevocable Right of Entry for Borrow, Access, and Construction (Repair and Rehabilitation) of the Lake Pontchartrain Louisiana and Vicinity Hurricane Protection Levee, St. Bernard Parish (hereinafter “Commandeering Order”).” Pursuant to the Commandeering Order, St. Bernard commandeered the use of certain private property within the parish near and on the west side of the Mississippi River Gulf Outlet and adjacent to and west of the Levee. The Commandeering Order permitted this property to “be used to obtain borrow materials, gain access, and construct (repair and rehabilitate)” the Levee. The Order also granted St. Bernard “an assignable right and easement to clear, borrow, excavate and remove soil, dirt, and other materials” from the properties. The private property subject to the Commandeering Order lies within and is a part of the properties belonging to Plaintiffs.
Additionally, the Commandeering Order granted LBBLD an irrevocable right of entry to the private properties for its use in [«¡obtaining borrow, access and construction of the Levee repairs and rehabilitation. On September 30, 2005, LBBLD issued an “Authorization for Entry for Borrow, Access, and Construction (Repair and Rehabilitation),” certifying that it had acquired real property interests in the Plaintiffs’ properties pursuant to the Commandeering Order and authorizing “the Department of the Army, its agents, employees, and contractors to enter upon these lands to obtain borrow, access, and construct (repair and rehabilitate) said levee as set forth in the plans and specifications ... (“Authorization”).”
On October 2, 2005, St. Bernard and LBBLD (collectively referred to as the “Defendants”) entered into a “Cooperation Agreement” with the United States of America, represented by Third — Party Defendant, United States Army Corps of Engineers (“USACE”). On October 17, 2005, these parties entered into the “Amended Cooperation Agreement.” (Amended Cooperation Agreement). Both Agreements designate St. Bernard and LBBLD as “Public Sponsors” obligated to provide to USACE “right of entry to all lands, easements, and rights-of-way, including suitable borrow and dredged or evacuated material disposal areas” as may be determined necessary by the USACE. USACE thereafter entered the properties and borrowed, excavated and removed soil, dirt, and other materials from the Plaintiffs’ properties, to repair the Levee.
The Authorization provides that private landowners of the commandeered property “shall be identified and compensated by LBBLD' in accordance with Louisiana State” law via agreement or settlement within twelve (12) months of the use of the property or otherwise LBBLD would file appropriate judicial proceedings. The Amended Cooperation Agreement provides that USACE “shall identify and pay just compensation to the owners” of the commandeered property.
In 2006, Plaintiffs were identified as owners of the properties from which soil, dirt, and other materials were removed pursuant to the Commandeering Order and the Authorization. They were not provided compensation for the removal or damage to their properties, nor were judicial proceedings filed on their behalf. As a result, Plaintiffs filed suit on May 18, 2007, in the 34th Judicial District Court for the Parish of St. Bernard, *968 Louisiana, against Defendants St. Bernard and LBBLD. Plaintiffs allege they suffered damages, caused by the actions of the Defendants, due to the removal of borrow material from their properties, the improper disposal of debris, the abandonment of equipment, the spillage of oil and other liquids, and other acts. Plaintiffs seek just compensation for the damage to their properties pursuant to Louisiana Constitution Article I, Section 4.
Subsequently, on May 8, 2009, St. Bernard moved for leave to file an Amended Answer and Third Party Demand, seeking to name LUSACE as a third-party defendant on the basis that USACE may be liable for Plaintiffs’ alleged damages and is indispensable for a just adjudication. The motion was granted, and on May 18, 2009, St. Bernard filed its Amended Answer and Third Party Demand alleging it is entitled to contribution from USACE pursuant to the Cooperation Agreement for any sums awarded Plaintiffs. Then, on May 19, 2009, USACE filed a Notice of Removal to this Court pursuant to 28 U.S.C. §§ 1441(a), 1441(b), 1442(a)(1), 2679(d)(3).
Id. (citations to record omitted). Based on the unique circumstances presented in this case of no one court having jurisdiction to hear both claims simultaneously, the federal court in Olivier I granted Olivier’s motion to sever its claim from St. Bernard’s third-party demand and remanded Olivier’s Louisiana state law takings claims against St. Bernard and the LBBLD. Olivier I, 744 F.Supp.2d at 589-90.
Following the remand, this matter was ultimately submitted for trial on the merits upon joint stipulations and deposition testimony. On March 12, 2012, the trial court rendered judgment in favor of Olivier and against St. Bernard and the LBBLD, finding them liable, jointly and in solido, for any damage and loss caused by the inverse condemnation of Olivier’s property. The trial court awarded damages for the value of borrow material removed from Olivier’s property in the principal amount of $2,045,430.00 together with interest from the date of judicial demand.[1] The trial court further made a separate award for attorney’s fees in an amount to be set after a contradictory hearing on the issue. On March 20, 2012, [5the trial court granted the motion to amend judgment “to solely correct a typographical error” by changing the principal amount awarded to $2,449,930.00.[2]
Thereafter, the parties waived a contradictory hearing on the attorney’s fees issue and submitted the matter on written argument. In support of its claim for attorney’s fees, Olivier introduced the deposition testimony of an expert, Fred Herman;[3] a copy of its contract with its *969 attorneys, the letter of engagement;[4] and a chart of the hours worked by its attorneys.[5] On November 9, 2012, the trial court rendered judgment awarding a total of $882,318.65 for costs and attorney’s fees. The total amount of that award for attorney’s fees was $808,476.90. This appeal followed.
DISCUSSION
The issues presented in this case are virtually identical to those presented by the same appellants-defendants — St. Bernard and the LBBLD — in Borgnemouth Realty Co., Ltd. v. Parish of St. Bernard, 13-1651 (La.App. 4 Cir. 5/21/14), 141 So.3d 891, writs denied, 14-1285 (La.9/26/14), 149 So.3d 266, and 14-1351 (La.9/26/14), 149 So.3d 269. We find our holding |nin the Borgnemouth case dispositive of all the issues in this case with one exception.[6] The exception is the issue of attorney’s fees, which we find requires an independent analysis.
In this case, the trial court awarded Olivier attorney’s fees in the amount of $808,476.90, which was 33% of the principal amount of the judgment.[7] St. Bernard and the LBBLD contend that the attorney’s fee award was unreasonably excessive. As we noted in Borgnemouth, “[w]e review these [attorney’s fee award] claims under an abuse-of-discretion standard and decline to modify such awards on appeal unless that standard is met.” 13-1651 at p. 17, 141 So.3d at 902 (citing Covington v. McNeese State Univ., 12-2182, p. 6 (La.5/7/13), 118 So.3d 343, 348). As we further noted in Borgnemouth, “the prevailing party may not recover attorney’s fees except where authorized by contract or statute.” Id. (citing Rivet v. State, Dept. of Transp. and Dev., 96-0145, p. 10 (La.9/5/96), 680 So.2d 1154, 1160). As we still further noted in Borgnemouth, the *970 governing statute providing for attorney’s fees in this inverse condemnation case is La. R.S. 13:5111, which provides:
|7A court of Louisiana rendering a judgment for the plaintiff, in a proceeding brought against the state of Louisiana, a parish, or municipality or other political subdivision or an agency of any of them, for compensation for the taking of property by the defendant, other than through an expropriation proceeding, shall determine and award to the plaintiff, as a part of the costs of court, such sum as will, in the opinion of the court, compensate for reasonable attorney fees actually incurred because of such proceeding.
La. R.S. 13:5111 A. Hence, the attorney’s fee award to Olivier was statutorily-mandated. The sole issue presented is whether the quantum of attorney’s fees awarded is reasonable.
In making the determination of whether the quantum of attorney’s fees awarded is reasonable, the following principles apply:
Attorney’s fees should be awarded on a case-by-case basis after examining numerous factors. Covington, 12-2182, p. 6, 118 So.3d at 348. The Louisiana Supreme Court has set out factors to be considered by a court in determining the reasonableness of an award of attorney’s fees: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court’s own knowledge. See State, Dept. of Transp. and Dev. v. Williamson, 597 So.2d 439, 442 (La.1992). A court may consider a contingency contract as well, but is not bound by such an agreement in determining reasonable attorney’s fees. See Rivet v. State, Dept. of Transp. & Dev., 01-0961, p. 6 (La.11/28/01), 800 So.2d 777, 782.
Borgnemouth, 13-1651 at pp. 17-18, 141 So.3d at 903.[8]
In support of their contention that the attorney’s fee award was unreasonably excessive, St. Bernard and the LBBLD make the following three arguments. First, they contend that the fee should be based on the discounted hourly rate actually charged and paid by Olivier under the blended contingency fee agreement. Second, | «they contend that the levee taking statute, La. R.S. 38:387 E, which caps attorney’s fees recoverable at 25% of the principal amount awarded, should be applied.[9] Third, they argue, based on the *971 factors enumerated in the jurisprudence and other fact-specific cases applying those factors, that the attorney’s fee award in this case is unreasonably excessive. We separately address each of these arguments.

Discounted hourly rate

St. Bernard and the LBBLD contend that the attorney’s fee award in this case should be limited to the discounted hourly rate that Olivier was billed, and actually paid to his counsel, under the blended contingency fee agreement— $194,694.75. Rejecting this argument, the trial court in its reasons for judgment stated:
Defendants would ignore the contingency portion of the letter of agreement [10] on attorneys fees and submit the Plaintiff attorneys fees should be on an hourly basis only for a period of 1210.5 hours billed for attorney time at the discounted rate $200.00 per hour for [(¡attorneys, Couhig and Rouse, and $145.00 per hour for attorney Cavignac and 9.8 hours of paralegal time for a total of $194,694.75, which Defendants label as reasonable and actually incurred in these proceedings. If, indeed, reference to any portion of the fee arrangements between Plaintiffs and their counsel is relevant to and to be considered in the court setting the amount of legal fees for which the non-prevailing parties on the main demand for damages may be cast in judgment to pay then the entire agreement should be considered by the court.
We agree. This argument is unpersuasive.

The levee taking statute

St. Bernard and the LBBLD next contend that the cap in the levee taking statute, La. R.S. 38:387 E, should be applied and that the cap of 25% of the principal amount awarded should be imposed in this case—$612,482.50. Although they acknowledge that this case does not involve an expropriation, they essentially contend that the cap in the levee taking statute should apply by analogy. They explain that due to the exigent circumstances presented by Hurricane Katrina, there was no opportunity to expropriate. Nonetheless, they contend that the public policy underlying the levee taking statute warrants applying the 25% attorney’s fée cap to this case involving the taking of property needed for levee purposes.
Olivier, on the other hand, points out that its expert, Mr. Herman, testified that the levee taking statute was not applicable because this is not a levee expropriation case; rather, it is a taking under the Homeland Security Act. Likewise, the trial court noted that “[h]ad the legislature desired to place a limitation on recovery in inverse condemnation cases, they certainly could have done so in R.S. 13:5111, just as they did for expropriation cases in R.S. 38:387.” The trial court thus found the governing statutory provision in this case is La. R.S.13:5111 A, which imposes no limit on the amount of attorney’s fees other than that -the fees be reasonable and actually incurred in the proceeding. We agree. Imlndeed, as noted above, we found in the Borgnemouth case that the governing statute providing for attorney’s fees in this type of inverse condemnation case is La. R.S. 13:5111. This argument is unpersuasive.

Other factors

Finally, as in Borgnemouth, St. Bernard and the LBBLD cite the factors *972 enumerated in the jurisprudence and other fact-specific cases.applying those factors in support of their contention that the attorney’s fee award in this case is unreasonably excessive. Olivier counters that the reasonableness of the fee was established by the testimony of its expert, Mr. Herman, who opined that under the circumstances of this case an even higher fee of up to 40% of the $2.4 million award would be reasonable. Moreover, as Olivier points out, the trial court in its reasons for judgment enumerated multiple facts that it considered in determining the attorney’s fee award, which included:
• The issues presented were novel and ' of first instance involving the right of a government to engage in a permanent taking of private property without compensation under a commandeering order issued in connection with an emergency declaration under the Louisiana Homeland Security and Emergency Assistance Act, La. R.S. 29:727.
• The precedential effect of this case on several other cases pending in this judicial district court.
• There was no attempt to acquire the property or to settle the controversy nor to expropriate in the state or federal courts by the Levee Board or the United States Corps of Engineers.
• The litigation lasted almost five years in both the state and federal district courts.
• There were many docket calls and exceptions and motions for summary judgment including those on liability and valuation.
• Olivier’s attorneys were competent and well prepared at every stage of the proceeding.
In* Olivier’s attorneys expended their time and legal skills making a substantial investment in the litigation by registering over 1,200 hours at a discounted hourly rate in return for the court to award attorney’s fees that would be reasonable.
As in Borgnemouth, we conclude that “the trial judge had the most familiarity with the issues involved in this appropriation matter and the time, diligence, and skill of the attorneys pursuing just compensation for [Olivier] in the face of unyielding resistance on the part of the political subdivisions to acknowledge any liability.” Borgnemouth, 13-1651 at p. 18, 141 So.3d at 903. Based on the particular facts of this case, we cannot conclude that the trial court’s award of 33% of the principal amount of the judgment in attorney’s fees was unreasonable. We thus find no abuse of the trial court’s discretion in setting the attorney’s fee award.

DECREE

For the foregoing reasons, we affirm the trial court’s judgment in favor of Olivier Plantation, L.L.C.; Park Investments, Ltd.; and Morning Park, Inc.„ and against the Parish of St. Bernard and the Lake Borgne Basin Levee District, in solido, up to the remaining indebtedness of $1,428,335.00, and for attorney’s fees in the amount of $471,350.55, all with interest, and for all costs of these proceedings, including the costs of the appeal. See La. C.C.P. art. 2164.
AFFIRMED.
JENKINS, J., dissents and assigns reasons.

. For purposes of this case, Olivier’s property from which the borrow material was taken was divided into three areas. The trial court entered judgment in favor of St. Bernard and the LBBLD rejecting Olivier’s claim for damages for the borrow material taken from Area 3. While this case was on appeal, the parties reached a settlement as to Areas 2 and 3. This appeal is thus limited to Area 1. Although the cubic yards the trial court found were taken totaled 489,986 (the total of Areas 1 and 2), as a result of the settlement the cubic yards still in dispute have been reduced to 285,667 (only the Area 1 amount).

. The error was in the mathematical calculation. The judgment was amended to reflect the correct figure arrived at by multiplying $5.00 times 489,986 cubic yards, the amount of borrow material taken from Areas 1 and 2.

. Mr. Herman testified that he has been a practicing attorney for thirty-seven years as of October 2012 and that he is a general practitioner. Mr. Herman opined that the attorney’s fee in this matter was governed by the letter of engagement entered into between Olivier and its attorneys.

. Under that letter of engagement, the parties agreed to a hybrid or blended contingency fee contract. Under the agreement, in the absence of a specific award for attorney’s fees, the fee was set at 33% of all amounts recovered pursuant to a judgment or settlement. The parties further provided for a discounted or reduced hourly billing from the attorney’s usual or normal billing rate and for the reduced amounts billed to, and paid by, Olivier on the hourly billing to be credited against any future contingency fee award.

. The chart of the hours worked by Olivier’s attorneys through January 31, 2013, pursuant to the letter of engagement, indicated that its attorneys’ law firm had worked 1,219.15 hours with 9.85 hours by a paralegal, and the remaining 1,210.50 hours worked by the attorneys.

. At oral argument before this court, the LBBLD’s counsel argued that this case is different from the Borgnemouth case in another respect. The LBBLD’s counsel argued that the other difference is that, in this case, the trial court in its reasons for judgment made at least two incorrect rulings. We find it unnecessary to address this issue given the well-settled principle that reasons for judgment are not controlling and do not constitute the trial court’s judgment from which an appeal is taken. Kaufman v. Adrians Tree Service, Inc., 00-2381, p. 3 (La.App. 4 Cir. 10/31/01), 800 So.2d 1102, 1104; Eugene v. Davenport, 14-0953, p. 6 (La.App. 4 Cir. 9/9/14), 150 So.3d 56, 65; Theresa Seafood, Inc. v. Berthelot, 09-0814, p. 7 (La.App. 4 Cir. 3/10/10), 40 So.3d 132, 137. A trial court’s reasons for judgment, albeit outlining and explaining a case, form no part of the trial court's judgment. Boykins v. Boykins, 04-0999, p. 6 (La.App. 4 Cir. 4/24/07), 958 So.2d 70, 75. Simply stated, appeals are taken from the trial court’s judgment, not its reasons for judgment.

.The trial court’s judgment awarded $808,476.90 in attorney's fees (33% of $2,449,930); however, as a result of settlement, the amount of attorney’s fees presently in dispute is $471,350.55 (33% of $1,428,335.00 ($5.00 multiplied by 285,667— the Area 1 amount)). These revised figures are reflected in the decree.

. In Williamson, the Louisiana Supreme Court noted that the ten factors were derived from Rule 1.5(a) of the Rules of Professional Conduct. Williamson, 597 So.2d at 442, n. 9.

. La. R.S. 38:387 provides:
A. The measure of compensation for the property expropriated is determined as of the time the estimated compensation was deposited into the registry of the court without considering any change in value caused by the proposed improvement for which the property is expropriated.
B. The measure of damages, if any, to the ' defendant’s remaining property is determined on a basis of immediately before and immediately after the expropriation taking into consideration the effects of the completion of the project in the manner proposed or planned.
C. The owner shall be compensated to the full extent of his loss.
D. The levee district or levee and drainage district shall present its evidence of value first.
E. Reasonable attorney's fees may be awarded by the court if the amount of the compensation deposited in the registry of the court is less than the amount of compensation awarded in the judgment. Such *971 attorney’s fees in no event shall exceed twenty-five percent of the difference between the award and the amount deposited in the registry of the court.

. The parties refer to the agreement between Olivier and its attorneys as a "letter of engagement”; the trial court refers to the agreement as a "letter of agreement.”