| LEON GREENBLATT | * | NO. 2019-CA-0694 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| SEWERAGE & WATER | * | |
| BOARD OF NEW ORLEANS, | | FOURTH CIRCUIT |
| B&K CONSTRUCTION CO., | * | |
| LLC, CAJUN | | STATE OF LOUISIANA |
| CONSTRUCTORS, LLC, | * * * * * * * | |
| LINFIELD, HUNTER & | | |
| JUNIUS, INC. AND BOH BROS | | |
| CONSTRUCTION CO., LLC | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2015-10344, DIVISION "D"
Honorable Nakisha Ervin-Knott, Judge
* * * * * *
**Judge Daniel L. Dysart**
* * * * * *
(Court composed of Chief Judge James F. McKay, III, Judge Daniel L. Dysart, Judge Dale N. Atkins)

Darleen M. Jacobs
Hunter P. Harris, IV
JACOBS SARRAT LOVELACE & HARRIS
823 St. Louis Street
New Orleans, LA 70112
        COUNSEL FOR PLAINTIFF/APPELLEE

Craig B. Mitchell
Kiana M. Mitchell
Joseph B. Morton, III
Christopher D. Wilson
MITCHELL & ASSOCIATES, APLC
615 Baronne Street, Suite 300
New Orleans, LA 70113

Darryl Harrison
SEWERAGE & WATER BOARD OF NEW ORLEANS
625 St. Joseph Street
New Orleans, LA 70165
        COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**
**DECEMBER 20, 2019**

The Sewerage and Water Board of New Orleans ("S&WB") appeals two judgments rendered by the trial court awarding Leon Greenblatt $94,429.51 for damages to his property and $37,771.80 in attorney fees. For the reasons that follow, we affirm the judgments of the trial court.

**FACTS:**

In the years following hurricanes Katrina and Rita, the United States Congress appropriated funds to the United States Army Corps of Engineers ("USACE") for the purpose of modifying authorized projects to provide hurricane, storm and flood damage reduction in the greater New Orleans area. The project made the subject of this litigation is designated as the Southeast Louisiana Urban Drainage Project ("SELA"). The USACE entered into a Project Partnership Agreement ("PPA") with the Louisiana Coastal Protection and Restoration Authority ("CPRA"), seeking to make the CPRA the non-federal sponsor for the project. However, because the CPRA has no control over local drainage in Orleans

Parish, it in turn entered into a Cooperative Endeavor Agreement ("CEA") with the S&WB to allow the construction to go forward.

On October 28, 2015, Mr. Greenblatt filed suit against the S&WB and the three contractors with whom the USACE had contracted to perform the work alleging that the construction project damaged two of his properties located at 2601-03 and 2605 Napoleon Avenue. The three contractors removed the suit to federal court and filed motions for summary judgment asserting immunity from suit as federal government contractors. The federal court granted the contractors' motions, dismissing all claims against them, and remanded the matter to Civil District Court for proceedings against the S&WB.[1]

This matter was tried, along with a companion (but not consolidated) case entitled *Sewell v. Sewerage & Water Bd. of New Orleans,*[2] on October 15-18, 2018, with one judgment being rendered as to all parties. In *Sewell*, the trial court ruled on the liability issues, found that the SELA project caused damages to all plaintiffs' properties and thus, the S&WB was liable for those damages. The trial court found the S&WB liable on a number of theories: inverse condemnation; strict liability pursuant to La. Civ. Code articles 2317 and 2317.1; and strict liability for ultra-hazardous pile driving pursuant to La. Civ. Code art. 667. The trial court then found that the construction activities caused the plaintiffs' property damages and that the S&WB failed to demonstrate the comparative fault of other parties

---

[1] *Sewell v. Sewerage and Water Bd. of New Orleans,* 15-3117, (E.D.La. 12/12/2016), 2016 WL 7385701, *aff'd,* 697 Fed. Appx. 288 (5 Cir. 8/28/17).
[2] 18-0966 (La.App. 4 Cir. 5/29/19), --- So.3d ----, 2019 WL 2305673, *writ denied,* 2019-01166 (La. 10/15/19), 280 So.3d 612.

involved in the construction. The trial court rendered separate damages awards to each plaintiff.

In Mr. Greenblatt's case, the trial court awarded $94,429.51 for damages to his two properties, but rejected his claims for loss of rent, for the diminution in the value of his properties and his claim for emotional distress. Following a separate hearing on his motion to award attorney fees and costs, the trial court awarded Mr. Greenblatt attorney fees in the amount of $37,771.80.

## DISCUSSION:

### A. Standard of Review:

Appellate courts apply the "manifest error" or "clearly wrong" standard when reviewing a trial court's findings of fact. *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989)(citations omitted). This standard of review requires the appellate court to apply a two-part test:

> (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes the finding is clearly wrong (manifestly erroneous).

*Wilson v. Veolia Transp. Servs., Inc*., 15-0998, p. 3 (La. App. 4 Cir. 4/13/16), 192 So.3d 245, 248 (citing *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987)). As we noted in *Wilson*:

> This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. The issue to be resolved by a reviewing court is not whether the trier of fact was

right or wrong, but whether the factfinder's conclusion
was a reasonable one. (Citations omitted).

*Id*. Furthermore, "[w]here two permissible views of the evidence exist, the fact

finder's choice between them cannot be manifestly erroneous or clearly wrong,

even if the reviewing court would have decided the case differently." *Everhardt v.*

*Louisiana Dep't of Transp. & Dev.*, 07-0981, p. 18 (La. App. 4 Cir. 2/20/08), 978

So.2d 1036, 1049. Accordingly, reasonable evaluations of credibility and

reasonable inferences of fact are not to be disturbed by an appellate court even

though it "may feel its own evaluations and inferences are more reasonable than

the fact finder's." *Id*.

**B. Liability Issues**

All issues of liability, *i.e.*, strict liability pursuant to Louisiana Civil Code

articles 2317, 2317.1 and 667, and comparative fault, were previously decided and

reviewed in the *Sewell* matter. The *Sewell* court held, in pertinent part, as follows:

> [Inverse condemnation[3] –] "[T]he SELA project was a
> state project, wherein the S[&]WB was acting under its
> power of eminent domain in carrying out that project.
> Thus, we cannot say that the trial court was manifestly
> erroneous in finding that the SWB was liable to the
> Plaintiffs on the inverse condemnation claim."
>
> * * * *
>
> [La. Civ. Code arts. 2317[4] and 2317.1[5] –] "[[T]he record
> reflects that this project lasted for well over two years.

---

[3] La. Const. art. I, §4 (B)(1) provides that the State or its subdivisions may not take or damage a person's private property without paying just compensation.

[4] La. Civ. Code art. 2317 provides: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. . . ."

[5] La. Civ. Code art. 2317.1 provides: "The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the

4

Prior to construction, the SWB was aware of the risk and anticipated damages to surrounding property caused from vibrations throughout SELA Project construction. During construction, the SWB received reports that the construction vibrations were regularly exceeding a peak particle velocity of .25 inches per second, which was a significant factor in causing property damage. The property owners also reported the issues directly to the SWB through its hotline. Furthermore, there is nothing to indicate that the SWB took any corrective measures in the two to four-and-a-half years this project continued. Since the Plaintiffs established that the SWB failed to timely correct the defect after receiving actual notice pursuant to La. R.S. 9:2800, the trial court did not err in finding the SWB liable under Article 2317 and 2317.1."

\* \* \* \*

[La. Civ. Code art. 667 –] "[A] review of the jurisprudence indicates that the SWB is the proprietor under the facts of this case, where the public drainage system to which the SELA Project constructions extends is owned, constructed, maintained and operated by the SWB. *See Lombard v. Sewerage & Water Bd. of New Orleans,* 284 So.2d 905, 914 (La. 1973)(citing La. R.S. 33:4071)(SWB, against which suit was brought by property owners seeking to recover for residential damage allegedly caused by the installation of an underground, concrete drainage canal, were "proprietors."); *Holzenthal [v. Sewerage & Water Bd. of New Orleans,]* 06-796, p. 24, 950 So.2d [55,] 71 (SWB was liable to homeowners for damage done to homes from drainage construction project under the strict liability and negligence provisions of La. C.C. art. 667).

\* \* \* \*

[Comparative fault –] "[T]he relationship between the SWB, USACE and the contractors was contractual. Thus in order to apportion comparative fault for negligence, it was incumbent upon the SWB to establish a standard of care and a breach in the standard of care that caused Plaintiff's damages. … There is no evidence that any of the contractors breached their contracts, negligently or otherwise."

---

damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care…."

*Sewell*, 18-0996, pp. 3-7, --- So.3d ----,---- , 2019 WL 2305673 at ** 4-14. The question of the S&WB's liability was, thus, determined by the *Sewell* decision. This Court is bound by this precedent and we do not revisit that issue here.

## C. Causation:

In its first assignment of error, the S&WB maintains that the trial court erred in admitting two written documents under the "residual exception" to the hearsay rule, La. Code Evid. art. 804(B)(6).[6] The two documents at issue are writings by experts, both of whom died prior to trial, and offered into evidence by Mr. Greenblatt. The S&WB first argues that these documents were "first produced as part of the federal court mediation process," and that the documents were "protected by Federal Rule of Evidence 408, which prohibits the admissibility of 'a statement made during compromise negotiations.'"[7]

Louisiana Code of Evidence article 408A contains a provision comparable to Federal Rule of Evidence 408[8] which indicates that "[e]vidence of conduct or statements made in compromise negotiations is . . . not admissible." It is clear that Article 408 is designed to foster open communications in settlement discussions and as this Court has noted, "evidence of a compromise or offer to compromise is inadmissible insofar as it may tend to establish liability." *Reeves v. Grove*, 10-1491, p. 8 (La. App. 4 Cir. 9/21/11), 72 So.3d 1010, 1015. *See*, *e.g.*, *Reichenbach*

---

[6] Under that hearsay exception, "[i]n a civil case, a statement not specifically covered by any of the foregoing exceptions if the court determines that considering all pertinent circumstances in the particular case the statement is trustworthy, and the proponent of the evidence has adduced or made a reasonable effort to adduce all other admissible evidence to establish the fact to which the proffered statement relates and the proponent of the statement makes known in writing to the adverse party and to the court his intention to offer the statement and the particulars of it, including the name and address of the declarant, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it." La. C.E. art. 804B(6).

[7] Federal Rule of Evidence 408 (a)(2) provides, in pertinent part, that "[e]vidence of the following is not admissible. . . conduct or a statement made during compromise negotiations about the claim. . . ."

[8] The Official comments to La. C.E. art. 408 reflect that the "Article generally follows Federal Rule of Evidence 408."

*v. Smith*, 528 F.2d 1072, 1074 (5th Cir. 1976)("[a] primary reason for excluding evidence of a compromise is to encourage non-litigious solutions to disputes. Admission of evidence of the settlement could work to discourage plaintiffs and defendants from settling with one or more of several codefendants."); *United States v. Reserve Min. Co.*, 412 F. Supp. 705, 712 (D. Minn. 1976)("[t]he purpose for the privilege surrounding offers of compromise is to encourage free and frank discussion with a view toward settling the dispute. It is not designed to shield otherwise discoverable documents, merely because these documents represent factual matters that might be or are incorporated in a settlement proposal.").

Thus, while "statements made in compromise negotiations" are inadmissible, expert reports are clearly not "statements" as contemplated by Article 408. This argument of the S&WB is wholly without merit.

The S&WB further argues that it was prejudiced by a ruling of the trial court which denied its motion *in limine* seeking to exclude the two reports. It maintains that it was denied the opportunity to cross-examine the two men who produced the reports, and contends that the reports only addressed damages to one of Mr. Greenblatt's properties, 2605 Napoleon Avenue. The trial court rejected these arguments, ruled the reports to be admissible and relied upon these reports to find that the S&WB had caused damages to the entirety of both of Mr. Greenblatt's properties.

In this appeal, the S&WB argues that the reports do not qualify as expert reports pursuant to La. Code Civ. Proc. Art. 1425 B because neither identifies any

7

data or other information considered by the writers in forming their opinions.[9]  It further argues that the reports do not include any of the required attachments, and do not meet the requirements of La. Code Evid. art. 702.[10]  The S&WB asserts that allowing these reports into evidence is particularly prejudicial because Mr. Greenblatt denied the S&WB the opportunity to inspect the property in the condition it was in when the reports were prepared.

Mr. Greenblatt counters by arguing that the trial court properly performed its gatekeeping function and found that the reports had a "reliable basis in the knowledge and experience of [the relevant] discipline.  See *Kumho Tire Co., Ltd. v. Carmichael,* 119 S.Ct. 1167 (1999)(quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592, 113 S.Ct. 2786, 2796 (1993)).  Mr. Greenblatt maintains that the reports were properly admitted.

At the outset, we note that "trial court is afforded wide discretion in determining whether expert testimony should be admitted and who should or should not be qualified as an expert;" thus, "the decision to qualify an expert will not be overturned absent an abuse of discretion.  *Boudreaux v. Bollinger Shipyard*, 15-1345, p. 15 (La. App. 4 Cir. 6/22/16), 197 So.3d 761, 770-71.

In its reasons for judgment, the trial court referenced the two reports, stating that the two men opined that the SELA construction project caused the damages to the Greenblatt property.  The trial court also stated that Mr. Greenblatt's

---

[9] In this regard, the S&WB relies on the provision in Article 1425 B that an expert report "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor and the data or other information considered by the witness in forming the opinions." La. Code Civ. Proc. art. 1425.

[10] Article 702 governs the testimony of a "witness who is qualified as an expert by knowledge, skill, experience, training, or education" and requires that certain parameters be met.  This article is a codification of *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).  *See Freeman v. Fon's Pest Mgmt.,* Inc., 17-1846 (La. 2/9/18), 235 So.3d 1087, 1089

construction expert, Buford W. Williams, Jr., relied on the reports for his assessment.

William Heibesen's letter to Mr. Greenblatt states that he, as an architect, could not determine causation, and he recommended hiring an engineer to make that determination. The trial court, in its reasons for judgment, incorrectly noted that Mr. Heibesen opined that the damages to Mr. Greenblatt's properties were the result of the SELA project. As such, while the trial court erred in allowing Heibesen's letter into the record regarding causation, we find that, based on other evidence of causation accepted by the trial court, the error was harmless.

Holt Fastring, a Louisiana registered professional mechanical engineer, also provided a report for the purpose of the federal court mandated mediation. His report provided that the porch in front of 2605 Napoleon was separating from the main structure. Based on his observation of large concrete pipes on the neutral ground in front of the property, Mr. Fastring opined that pile drivers were used to lay the foundation for these pipes, and that the vibrations generated by the pile drivers caused the porch to separate. Although this report lacks all of the information required by La. Code Evid. art. 702, we cannot say that the admission of the report was in error.

By stipulation of the parties, Buford W. Williams, Jr. (sometimes referred to as "Beau Williams") testified as an expert in general contracting and project managing for both residential and commercial property. He is a licensed contractor and owner of Crescent Sun Construction Consulting, L.L.C. He identified a letter he prepared regarding the inspection of the Greenblatt properties at the owner's request. Although not dated, he testified that the letter was prepared at the end of 2016 at the request of Mr. Greenblatt's counsel. He reviewed the

9

report prepared by Mr. Fastring and photographs of the property and surrounding area. Mr. Williams observed that there had been some recent repairs to the properties, and that the amount of work already done would have cost approximately $104,000.00.

Mr. Williams testified that the damage to the properties, particularly the gaps and cracks, were caused by movement. Based on his own observations and the Fastring report, he believed the pile driving on the neutral ground caused the damages. He identified photographs which showed cracks in the sheetrock, stucco and sidewalks around the properties. He estimated that it would cost approximately $51,000.00 to repair the damage he observed to the properties.

This evidence, combined with the other evidence discussed above, supported the trial court's decision as to causation. We cannot say that the trial court abused its discretion in the admission of the expert reports, nor in its ultimate finding that the SELA project was the cause of the damages to Mr. Greenblatt's properties.

Turning to the S&WB's argument that the trial court erred in not granting its request for an adverse presumption due to spoliation of the evidence of the pre-renovation condition of the properties, we find no merit to this contention.

The S&WB argues that Mr. Greenblatt knew he was in the process of renovating the property, whether due to construction damage or not, at the time he filed this lawsuit in 2015. At that point, he knew that the condition of the property was the central issue of the litigation; however, it was not until October of 2016 that the S&WB learned of the renovations/repairs. By not preserving the evidence relative to the claim, the S&WB maintains it was entitled to the adverse presumption that all of the complained of damages were not caused by the SELA construction.

10

We note that the trial court did not find that the renovations and repairs made by Mr. Greenblatt to his properties, which began prior to Mr. Greenblatt's filing suit, were done to intentionally deprive the S&WB of evidence. As our jurisprudence indicates, there is no cause of action for negligent spoliation of evidence and as such, the trial court properly rejected the adverse presumption argument.

In *Reynolds v. Bordelon*, 14-2362 (La. 6/30/15), 172 So.3d 589, the Supreme Court examined "whether Louisiana recognizes a claim for negligent spoliation" and concluded that "no cause of action exists for negligent spoliation of evidence." *Id.,*14-2362, pp. 1, 6, 172 So.3d at 592, 595. In examining this question, the Court implicitly rejected a standard whereby a party who knew or should have known that his conduct would result in harm would be liable for spoliation. *Id.,* 14-2362, p. 7, 172 So.3d at 595-96, 598. Further, the Court found that "the act of negligently spoliating evidence is so unintentional an act that any recognition of the tort ... [would] act to penalize a party who was not aware of its potential wrongdoing in the first place." *Id.,* 14-2362, p. 9, 172 So.3d at 597.

We do not find that the trial court erred in rejecting the S&WB's claim for spoliation of the evidence in this case. We also note that Mr. Greenblatt explained that the repairs made to his properties were done for the purpose of maintaining a safe environment for his tenants until such time as he could sell the properties. We find no error in the ruling of the trial court.

**D. Damages**:

In its reply brief, the S&WB raises, for the first time, the issue of damages and argues that the trial court abused its discretion in awarding damages in the amount of $94,429.51. Rule 2-12.6 of the Uniform Rules – Courts of Appeal

11

specifies that the reply brief "shall be strictly confined to rebuttal of points urged in the appellee's brief." Mr. Greenblatt's brief did not raise any issue with respect to damages in this case, and accordingly, the argument raised by the S&WB in its reply brief concerning damages is not the "rebuttal of points" raised by Mr. Greenblatt. The issue of damages is an altogether new issue not properly before this Court and we decline to address this issue. *See*, *e.g.*, *Outdoor Sys., Inc. v. Entergy Corp.*, 01-0613, pp. 5-6 (La. App. 4 Cir. 12/19/01), 804 So.2d 848, 852; *Gygax v. Brugoto*, 92-0003, pp. 8-9 (La. App. 4 Cir. 11/30/94), 646 So.2d 1236, 1242; *Price v. Erbe USA, Inc.*, 09-1076, p. 4 n.2 (La. App. 3 Cir. 6/9/10), 42 So.3d 985, 988; *Jefferson Par. Sch. Bd. v. Rittiner Eng'g Co.*, 570 So.2d 528, 531 (La. App. 5 Cir. 1990).

**E. Attorney Fees**:

The S&WB argues that the trial court impermissibly awarded attorney fees without authorization by statute or contract. The trial court awarded fees pursuant to La. R.S. 13:5111 A,[11] which allows for compensation only for inverse condemnation claims. As the plaintiff sought damages pursuant to several theories of recovery, the S&WB argues that the trial court erred in not determining which separate acts and activities of the S&WB were applicable to the claim for inverse condemnation.

A trial court's award of attorney fees is reviewed using an abuse of discretion standard. *Covington v. McNeese State Univ.,* 12-2182, p. 6 (La. 5/7/13),

---

[11] La. R.S. 13:5111 A provides, in pertinent part that "[a] court of Louisiana rendering a judgment for the plaintiff, in a proceeding brought against the state of Louisiana, a parish, or municipality or other political subdivision or an agency of any of them, for compensation for the taking of property by the defendant, other than through an expropriation proceeding, shall determine and award to the plaintiff, as a part of the costs of court, such sum as will, in the opinion of the court, compensate for reasonable attorney fees actually incurred because of such proceeding."

118 So.3d 343, 348. The Louisiana Supreme Court stated that in applying the standard, "the role of the reviewing court is not to determine what it considers to be an appropriate award, but rather it is to review the exercise of discretion by the trier-of-fact." *Id.,*12-2182, p. 11, 118 So.3d at 351. The trial court's factual findings used to determine the award are reviewed pursuant to the manifest error/clearly wrong standard. *Stobart v. State, Dep't of Trans. & Dev.,* 617 So.2d 880, 882 (La. 1993).

The S&WB claims that the trial court erred by awarding damages for the separate acts and activities for which it had been held liable under La. Civ. Code arts. 667, 2317 and 2317.1, as those articles do not provide for attorney fees. The S&WB argues that, when awarding fees pursuant to La. R.S. 13:5111, courts most often make awards in the range of twenty-eight to thirty-three percent of the final judgment.

The Louisiana Supreme Court has set forth ten factors to be considered in making an award for attorney fees in an inverse condemnation proceeding: 1) the result obtained; 2) the responsibility incurred; 3) the importance of the litigation; 4) the amount of money involved; 5) the extent and character of the work involved; 6) the legal knowledge, attainment, and skill of the attorneys; 7) the number of case-related appearances; 8) the intricacies of the facts; 9) the diligence and skill of counsel; and, 10) the court's own knowledge. *Rivet v. State Dep't of Transp. & Dev.*, 96-0145, pp. 11-12 (La. 9/5/96), 680 So.2d 1154, 1161 (citing *State, DOTD v. Williamson,* 597 So.2d 439, 441-42 (La. 1992)). A court may also consider a contingency fee contract between plaintiffs and their counsel in determining an award of attorney fees. *See Olivier Plantation, LLC v. Parish of St. Bernard,* 13-0497, p. 7 (La.App. 4 Cir. 10/30/14), 151 So.3d 965, 970 (quoting *Borgnemouth*

*Realty Co., Ltd. v. Parish of St. Bernard,*13-1651 (La.App. 4 Cir. 5/21/14), 141 So.3d 891, 903.

Our review of the record reveals that there were numerous court hearings and depositions taken in this matter, as well as a four-day trial. It is clear from the testimony that counsel for plaintiff was well-prepared and knowledgeable about this complex and technical litigation. We also recognize that the S&WB agrees that an approximate one-third fee is appropriate. Our job on appellate review is not to determine what we would award, but rather to determine if the award is an abuse of the trial court's discretion. As the amount awarded is only slightly higher than one-third of the judgment, we cannot say that the trial court abused its discretion.

Accordingly, for the reasons assigned, we affirm both judgments of the trial court.


**AFFIRMED**