JAMES F. McKAY III, Chief Judge.
| ¶ Joc-Kia Wilson sustained personal injuries to her neck, shoulders, back and legs on August 20, 2012, while she was attempted to board an RTA bus, operated by Veolia Transportation Services, Inc., on City Park Avenue with her motorized scooter. She alleges that the wheelchair lift ramp on the bus malfunctioned and caused her to fall. Ms. Wilson suffered from cerebral palsy and had issues with mobility and cognition at the time of the accident. Ms. Wilson was also involved in two motor vehicle accidents on August 2, 2012 and August 6,2012, respectively, both from which she claims to have sustained personal injuries.
On August 24, 2012, Ms. Wilson- sought medical treatment form Dr. Heise Cornett at Barry Bordanaro M.D., Allied Physicians.- Her physical examination revealed cervical, thoracic, and lumbar strain/ sprain; right trapezius muscle strain/ sprain; and bilateral lower extremity strain/sprain. Ms. Wilson had follow-up visits on September 20, 2012, October 25, 2012 and November 20, 2012 with Dr. John Cornett. On November 20, 2012, Dr. Cor-nett ordered an MRI. The MRI |2was conducted at Standup Open MRI on December 12, 2012. The MRI showed multilevel disc bulges at the lower thoracic and lumbar spines.
On July 24, 2013, Ms. Wilson filed a petition for-damages in Civil District Court for the Parish of Orleans, naming Veolia Transportation Services, the Regional Transit Authority and Old Republic Insur-.anee Company as--defendants. A bench trial took place on January 26, 2015. In lieu of live testimony from her treating physicians, Ms. Wilson submitted certified copies of her medical bills and records from Barry Bordanaro, M.D., Allied Physicians in the amount of $930.00[1] and Standup Open MRI in the amount of $1,400.00 totaling $2,370.00. Included with Ms. Wilson’s certified medical records was a copy of Dr. Cornett’s report, dated March 5, 2013, in which he recounts the modality therapies initiated to address Ms. Wilson’s injuries and discomfort. In, his report, he concludes that “given the history and physical examination findings, .the injuries experienced by the patient were more probably than not, results of the accidents.”
On January 30, 2015, the trial court rendered judgment in favor Joc-Kia Wilson and against Veolia Transportation Services. The court awarded $17,500.00 for Ms. Wilson’s pain and suffering and $2370.00 for medical expenses, plus court costs and interest from the date of judicial demand, "The judgment was reduced by forty percent (40%) due to Ms. Wilson’s comparative fault. ■ It is from this judgment that Veolia Transportation Services now appeals.
|aOn appeal, Veolia Transportation Services raises the following assignments of error: 1) the trial court erred in finding that plaintiff, Joc-Kia Wilson, was only 40% at fault for the accident and in assigning 60% of the fault to Veolia Transportation Services; and 2) the trial court erred in awarding plaintiff, Joc-Kia Wilson, $2,370 in medical expenses, provided that there was ho evidence presented by plaintiff, specifically indicating the charges for *248 medical treatmónt were incurred as a result of the injuries alleged in this matter.
A court of appeal may not set aside a trial court’s or jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840 (La.1989); Stobart v. State through DOTD, 617 So.2d 880 (La.1993). The Louisiana Supreme Court has announced a test for the reversal of a factfin-der’s determinations: 1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and 2) the appellate court must further determine that the record establishes the finding is clearly wrong (manifestly erroneous). See Mart v. Hill, 505 So.2d 1120, 1127 (La. 1987) (citations omitted). This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s finding. Id. The reviewing court must review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. See Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991). Similarly, apportionment or allocation of fault is subject to the clearly wrong standard of review. Clement v. Frey, 95-1119, 95-1163, p. 7 (La.1/16/96), 666 So.2d 607, 610-11; Temple v. State ex rel. Dept. of Transp. and Development, 2002-1977 (La. App. 1 Cir. 6/27/03), 858 So.2d 569.
In its first assignment of error, the appellant contends that the record does not support the trial court’s allocation of fault at 60 % to Veolia Transportation Services and 40 % to Ms. Wilson. When “a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.” La. C.C. art. 2323. In allocating comparative fault consideration must be directed toward the nature of each party’s conduct and the extent of the causal relationship between that conduct and the damages claimed. Some of the factors which may influence the degree of fault assigned in that assessment are: 1) whether the conduct resulted from inadvertence or involved an awareness of the danger; 2) how great a risk the conduct created; 3) the significance of what the actor sought by the conduct; 4) the capacities of the actor, whether superior or inferior; and 5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Gray v. Louisiana Downs, 585 So.2d 1238, 1242 (La.App. 2 Cir.1991) citing Watson v. State Farm Casualty Ins. Co., 469 So.2d 967 (La.1985).
Lin the instant case, Ms. Wilson was on City Park Avenue in New Orleans waiting for an RTA bus operated by Veolia Transportation Services. When the bus arrived, those passengers who could walk onto the bus boarded first. Then, the bus driver lowered the ramp to allow Ms. Wilson to enter the bus on her scooter. The ramp landed partially on the sidewalk and partially on the grass resulting in an uneven surface. Ms. Wilson testified that due to the unevenness of the surface, she directed her scooter toward the side of the ramp resting on the concrete. She also testified that she asked the driver to lower the ramp again onto a more even surface, but he refused. However, this request is not evidenced by a video of the incident. While Ms. Wilson was ascending the ramp, *249 her scooter overturned and she fell on her left knee, arm and shoulder. The trial court found that by lowering the ramp onto both the grass and the concrete, the bus driver negligently created an uneven and unsafe condition for disabled riders such as Ms. Wilson. The eourt also found that Ms. Wilson contributed to her injury. She recognized the potential danger'of using the ramp while it was resting on an uneven surface but rather than requesting that the driver move the ramp to level ground, she attempted to move around the grassy area and ascend the ramp anyway. Therefore, the trial court assigned Ms. Wilson 40 % comparative fault and reduced her damages by that amount.
Based on the record before this Court and the factors set forth by the Supreme Court in Watson, we find nothing manifestly erroneous or clearly wrong with the trial court’s allocation and apportionment of fault in this case.
| (¡In its second assignment of error, the appellant contends that that the trial court erred in awarding the appellee $2,370.00 in medical expenses because there was no evidence presented by plaintiff specifically indicating the charges for medical treatment were incurred as a result of the injuries alleged in this matter. At trial, the plaintiff submitted certified copies of her medical bills from Barry Bordanaro, M.D., Allied Physicians in the amount of $930.00 and Standup MRI in the amount of $1,400.00, for a total of $2,370.00. The amount of $930.00 was stipulated to at trial and is limited to the Allied Physicians’ charges for the date of the accident in question until the plaintiffs discharge on March 5, 2013. As stated above, the plaintiff also submitted the report of Dr. Cornett along with the plaintiffs medical bills. The report stated that “given the history and physical examination findings, the injuries experienced by the patient were more probably than not, results of the accidents.” There was no evidence introduced by the defendant’s to dispute Dr. Cornett’s report relating the medical treatment and bills to the accident in question. Considering this and the fact that a defendant takes a plaintiff in the condition that one finds the plaintiff, the trial court’s awarding Ms. Wilson $2,370.00 in medical expenses was reasonable.
For the above and foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED

. The amount of $930.00 stipulated to at trial is limited to Allied Physicians' charges from the date of the accident (August 20, 2012) until Ms. Wilsbn's discharge on March 5, 2013.