| | | |
|---|---|---|
| **5640 ST. CLAUDE, LLC** | * | **NO. 2023-CA-0659** |
| **VERSUS** | * | **COURT OF APPEAL** |
| **DURR HEAVY CONSTRUCTION, LLC AND** | * | **FOURTH CIRCUIT** |
| **THE CITY OF NEW ORLEANS** | * | **STATE OF LOUISIANA** |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-02554, DIVISION "F-14"
Honorable Jennifer M. Medley
\* \* \* \* \* \*
**JUDGE SANDRA CABRINA JENKINS**
\* \* \* \* \* \*

(Court composed of Judge Daniel L. Dysart, Judge Sandra Cabrina Jenkins, Judge Dale N. Atkins)

Luis Etienne Balart
Jarred G. Trauth
Christopher K. Ulfers
Sara B. Kuebel
JONES WALKER LLP
201 St. Charles Avenue, 48th Floor
New Orleans, LA 70170

      COUNSEL FOR DEFENDANT/APPELLEE

Renee Goudeau
Corwin M. St. Raymond
Deisha LaGarde
Donesia D. Turner
CITY ATTORNEY
CITY OF NEW ORLEANS
1300 Perdido St., 5E03
New Orleans, LA 70112

      COUNSEL FOR DEFENDANT/APPELLANT

**AMENDED IN PART; AFFIRMED AS AMENDED; ANSWER TO APPEAL**
**DENIED**
**MAY 10, 2024**

SCJ
DLD
DNA

The City of New Orleans (the "City") appeals the July 5, 2023 judgment of the trial court, finding the City ninety percent at fault, and Durr Heavy Construction, LLC ("Durr") ten percent at fault for plaintiff, 5640 St. Claude, LLC's ("St. Claude") damages. For the following reasons, we affirm the trial court's allocation of fault.

**FACTS AND PROCEDURAL HISTORY**

This action involves the demolition of property located at 5640 St. Claude Avenue in New Orleans, Louisiana ("St. Claude Property"). The property at issue was acquired by St. Claude through its principal, John Spencer ("Mr. Spencer"), at a Sheriff's sale in June 2017. The property was determined to be in imminent danger of collapse and the City issued a notice of emergency demolition. The City contracted with Durr Heavy Contruction, LLC ("Durr") to conduct the demolition.

Mr. Spencer became aware of the notice of emergency demolition and emailed Chad Dyer ("Mr. Dyer"), the director of code enforcement for the City,

1

notifying of the steps taken to renovate the property. Mr. Dyer informed Mr. Spencer that demolition of the property ceased and requested a timeline for the renovations.

The following is a chronological timeline of the pre-incident events:

- On April 10, 2018, Winston Reid ("Mr. Reid", the deputy director of code enforcement emailed Durr's project manager, John R. Ovella ("Mr. Ovella"), advising that the property should be in the "Do Not Demolish" category for emergency demolition.

- On April 17, 2018, St. Claude submitted an application for a structural renovation permit.

- Deborah Champagne ("Ms. Champagne") replaced Mr. Ovella as the project manager.

- In May of 2018, a meeting was held between the City and Durr.

- On May 9, 2018, Ms. Champagne emailed Mr. Reid a list of properties for demolition. The St. Claude property was on the list indicating that a demolition permit was issued.

- On May 9, 2018, Mr. Reid responded to Ms. Champagne's email stating that he would take a look at the list.

- On June 5, 2018, Ms. Champagne emailed Mr. Reid advising that Durr had permits for six properties scheduled for demolition, including the St. Claude property. She further asked that he advise her whether there were any hold ups on any of the properties she listed.

- On June 27, 2018, Mr. Reid texted Pay Layus ("Mr. Layus"), Durr's on-site project manager, requesting confirmation of the location Durr was working that day. Mr. Layus responded "5640 [S]t. Claude," the property at issue.

- The property was demolished on June 27, 2018.

In March 2019, St. Claude filed a petition for damages against Durr and the City. St. Claude alleged that Durr, operating as the contractor for the City, wrongfully demolished its property. A bench trial was held on March 28, 2023. On

July 5, 2023, the trial court signed a judgment in favor of St. Claude and against the City and Durr, allocating ninety percent fault to the City and ten percent fault to Durr. The judgment awarded St. Claude $29,000.00 for loss of value of property, ordering $26,100.00 be paid by the City and $2,900.00 be paid by Durr. The judgment further awarded St. Claude $34,410.00 for loss of monetary investment in the development of the property, ordering $30,969.00 be paid by the City and $3,441.00 be paid by Durr. The City filed a motion for suspensive appeal. This appeal follows.

**DISCUSSION**

*Preliminary Note*

We first address the trial court's clerical error in the July 5, 2023 judgment. The judgment in pertinent part:

> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Judgment be entered in favor of Plaintiff, 5640 St. Claude, LLC, and against Defendants, Durr Heavy Construction, LLC, and the City of New Orleans, in which Plaintiff, 5640 St. Claude, LLC's, *Petition for Damages*, is hereby **GRANTED** and Plaintiff, 5640 St. Claude, LLC, is entitled to an award of **TWENTY-NINE THOUSAND DOLLARS AND ZERO CENTS ($29,000.00)** for loss of value of property.
>
> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the amount of *thirty-four thousand and four-hundred and ten dollars* is to be reduced by Defendant, the City of New Orleans's appropriation of fault of **NINETY (90) PERCENT**, and thus Plaintiff, 5640 St. Claude, LLC, is awarded **TWENTY-SIX THOUSAND ONE HUNDRED DOLLARS AND ZERO CENTS ($26,100.00)**, with judicial interest from date of demand, costs to be assessed separately on either party's motion to tax costs.
>
> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the amount of *thirty-four thousand and four-hundred and ten dollars* is to be reduced by Defendant, Durr Heavy Construction, LLC's appropriation of fault of **TEN (10) PERCENT**,

and thus Plaintiff, 5640 St. Claude, LLC, is awarded **TWO-THOUSAND NINE-HUNDRED DOLLARS AND ZERO CENTS ($2,900.00)**, with judicial interest from date of demand, costs to be assessed separately on either party's motion to tax costs.

(emphasis in original) (italics added).

The trial court awarded St. Claude $29,000.00 for loss of value to property, however, in its allocation of fault, wrote "thirty-four thousand and four-hundred and ten dollars" instead of "twenty-nine thousand dollars and zero cents." The calculations within the judgment reflect that $29,000.00 is the appropriation of fault assigned to the defendants.

Louisiana Code of Civil Procedure Article 1951 allows the trial court to amend clerical errors in its judgment.[1] Nonetheless, "the court of appeal may correct clerical errors in the judgment of a trial court." *Succession of Rachal*, 2021-0621, p. 5 (La. App. 4 Cir. 6/8/22) 342 So.3d 1012, 1017-18 (citing *Moss v. Moss*, 2005-455, p. 5 (La. App. 3 Cir. 11/2/05), 916 So.2d 455, 458). Accordingly, we amend the July 5, 2023 judgment allocating the percentage of fault and damages for 5640 St. Claude, to reflect the amount of twenty-nine thousand dollars and zero cents ($29,000.00).

**Allocation of Fault by the Trial Court**

In its sole assignment of error, the City asserts that the trial court erred in the allocation of fault between the two defendants by allocating ten percent fault to Durr and ninety percent fault to the City.

---

[1] Louisiana Code of Civil Procedure Article 1951 provides in pertinent part that "[o]n motion of the court or any party, a final judgment may be amended at any time to alter the phraseology of the judgment or to correct deficiencies in the decretal language or errors of calculation."

4

Louisiana Civil Code Article 2323 governs comparative fault and directs in pertinent part that "[i]n any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined." La. C.C. art. 2323(A). "A trial court's allocation of fault is a question of fact." *Preston v. Certain Underwriters at Lloyd's London*, 2023-0277, p. 2 (La. App. 4 Cir. 1/22/24) 381 So.3d. 827, 831 (citing *Amos v. Taylor*, 51,595, p. 3 (La. App. 2 Cir. 9/27/17), 244 So.3d 749, 752).

"The trier of fact is owed great deference in its allocation of fault." *Goldsby v. Blocker Through Dep't of Transp. & Dev.*, 51,584, p. 5 (La. App. 2 Cir. 9/27/17), 244 So.3d 703, 710 (citing *Clement v. Frey*, 1995-1119, (La. 01/16/96), 666 So.2d 607). The trial court's factual finding are reviewed under the manifest error/clearly wrong standard of review. *Gordon v. Gordon*, 2016-0008, p. 3, (La. App. 4 Cir. 6/8/2016) 195 So.3d 687, 688. If a conflict in the testimony exist, "reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Sewell v. Sewerage & Water Bd. of New Orleans*, 2019-0268, p. 4 (La. App. 4 Cir. 1/20/21), 313 So.3d 333, 339 (quoting *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989)). On the other hand, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Id.* Therefore, "the issue to be resolved by the appellate court is not whether the trier of fact was

right or wrong, but whether the factfinder's conclusion was reasonable." *Id.* at pp. 4-5 (quoting *Stobart v. State through Dep't of Transp. and Dev.*, 617 So.2d 880, 882 (La. 1993)). In considering the nature of each party's conduct, this Court has found:

> Some of the factors that may influence the degree of fault assigned are: 1) whether the conduct resulted from inadvertence or involved an awareness of the danger; 2) how great a risk was created by the conduct; 3) the significance of what was sought by the conduct; 4) the capacities of the actor, whether superior or inferior; and 5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.

*Wilson v. Veolia Transp. Servs., Inc.*, 2015-0998, p. 4 (La. App. 4 Cir. 4/13/16), 192 So.3d 245, 248 (citing *Gray v. Louisiana Downs*, 585 So.2d 1238, 1242 (La. App. 2 Cir.1991)).

The City contends that the evidence established that the property was wrongfully demolished based upon Durr's disregard for the City's explicit instructions not to demolish the property and Durr's lack of communication and transition between project managers. The City further argues that Durr was instructed to not demolish the property unless formal notice in writing was given.

Durr counters that during a meeting held on May 9, 2018, Hillary Carrere, the City's demolition coordinator, provided Durr with a handwritten list of properties to be demolished and the property at issue was included on the list. Durr argues that it advised the City on three separate occasions that it was proceeding with demolition of the property as instructed in the May 9, 2018 meeting. Durr further argues it should be free from fault based on the City not rescinding the imminent danger of collapse notice.

At trial, Robert Wooderson ("Mr. Wooderson"), the corporate representative of Durr, testified that Durr was notified by the City to place the subject property on the "Do Not Demolish" category. Mr. Wooderson confirmed that once the City notified Durr of the status change, either Ms. Champagne or Mr. Ovella was responsible for ensuring that the change was noted. Mr. Wooderson submitted that Durr tracked the properties assigned for demolition with a spreadsheet and Ms. Champagne worked off the same spreadsheet as her predecessor, Mr. Ovella. However, Ms. Champagne testified that she did not work off of the same spreadsheet as Mr. Ovella and none of his lists were transitioned to her.

Ms. Champagne also testified that she attended the May 9, 2018 meeting and Mr. Carrere provided a handwritten list of properties in which she instructed to demolish. Ms. Champagne confirmed that Durr no longer had a copy of the handwritten list. Ms. Champagne testified that she emailed Mr. Reid a list of nineteen properties that Durr was proceeding to demolish, and she expected the City to cross-check the properties listed to inform her of any property that should not be included in the demolition. Ms. Champagne confirmed that the City did not email a formal notice to demolish the subject property, and Durr has not previously demolished a property based on a handwritten list.

Mr. Reid testified that his April 10, 2018 email to Mr. Ovella was an official notice to suspend all operations to demolish the property. He also testified that the May 9, 2018 meeting was primarily for budget, billing, invoicing, and the

outstanding terms of costs. Mr. Reid provided that he did not recall responding to Ms. Champagne's email inquiring whether there were any issues with the properties she listed for demolition. Mr. Reid testified that Mr. Carrere kept his own list of "Do Not Demolish" properties. He also confirmed that the City has never used a handwritten list to order demolition of properties, and did not authorize Durr with a handwritten list to demolish the subject property.

*Durr's Allocation of Fault*

First, we address whether the trial court's allocation of fault to Durr was manifestly erroneous. The City contends that Durr should be allocated a greater percentage of fault as the evidence shows that the property was wrongfully demolished based upon Durr's disregard for the City's instructions not to demolish the property and Durr's lack of transition between project managers to properly manage its records.

During the transitional phase of Durr's project managers, the spreadsheets and lists were not transferred to Ms. Champagne. Thus, if Mr. Ovella did in fact place the property on a "Do Not Demolish" list as instructed by the City, Ms. Champagne had no knowledge of it. While it is undisputed that Durr did not have a solidified system of managing properties in which demolition was postponed, there were numerous instances where Durr took steps to confirm that the property was to be demolished. In addition, Durr never received a notice from the City rescinding the notice of emergency demolition. Accordingly, we find the trial court was not manifestly erroneous in allocating ten percent fault to Durr.

*The City's Allocation of Fault*

Next, we address the City's allocation of fault. The City issued a notice of emergency demolition of St. Claude's property and subsequently contracted with Durr for the demolition. Upon instructing Durr to place the property on the "Do Not Demolish" list, the City bore a greater responsibility for maintaining and verifying properties placed on hold for demolition. The City was also responsible for rescinding the imminent danger of collapse and notice of emergency demolition.

The City's demolition coordinator and deputy director of code enforcement kept separate "Do Not Demolish" lists. Further, when Ms. Champagne emailed Mr. Reid a list of properties that were scheduled to be demolished, Mr. Reid failed to respond that the property at issue should not be on the list for demolition. Mr. Reid also failed to inform Durr that the property should not be demolished after receipt of the June 27, 2018 text message from Durr's on-site project manager that Durr was at the St. Claude property.

In light of the particular facts of the case and the record before us, we find that the trial court was not manifestly erroneous in assigning ninety percent fault to the City.

*Answer to Appeal*

Durr filed an Answer to Appeal requesting that the judgement be modified to allocate one hundred percent fault to the City. Based on our finding that

9

the trial court did not err in its allocation of fault, we deny Durr's Answer to Appeal.

## DECREE

For the foregoing reasons, we make a clerical amendment to that portion of the July 5, 2023 judgment allocating the percentage of fault and damages for 5640 St. Claude, to reflect the amount of twenty-nine thousand dollars and zero cents ($29,000.00). The judgment is affirmed in all other respects.

**AMENDED IN PART; AFFIRMED AS AMENDED; ANSWER TO APPEAL DENIED**